UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

JANET D. BELL     CIVIL ACTION NO. 04-2380

versus     JUDGE HICKS

COMMISSIONER OF THE SOCIAL     MAGISTRATE JUDGE HORNSBY
SECURITY ADMINISTRATION

## REPORT AND RECOMMENDATION

**Introduction**

Janet Bell ("Plaintiff") filed an application for Disability Insurance Benefits based on her assertion that she became disabled in June 1998 due to right elbow and arm pain, right thumb pain, high blood pressure and depression. Plaintiff, who was fifty years old when ALJ Charles Lindsay decided her claim, has a high school education and past work experience that includes employment as a factory worker on an assembly line. The Appeals Council declined to review the ALJ's decision, and Plaintiff filed this civil action for judicial review as permitted by 42 U.S.C. §405(g). For the reasons that follow, it is recommended that the Commissioners decision be reversed and this case be remanded for further proceedings.

**Summary of the ALJ's Decision**

The ALJ analyzed the claim pursuant to the five-step sequential analysis set forth in 20 C.F.R. § 404.1520 (governing claims for disability insurance benefits) and § 416.920 (parallel regulations governing claims for Supplemental Security Income) and described in

Barnhart v. Thomas, 124 S.Ct. 376, 379-80 (2003). He found that Plaintiff was not performing substantial gainful activity (step one) and suffered from right lateral epicondylitis and right thumb pain, impairments that are severe (step two) within the meaning of the regulations, but not severe enough to meet or medically equal a listed impairment (step three) that would direct a finding of disability. The ALJ then reviewed the medical evidence and testimony and determined that Plaintiff had the residual functional capacity ("RFC") to perform light work activity, reduced by an inability to drive automotive equipment or work around dangerous moving machinery or at unprotected heights. He found that Plaintiff should also avoid (1) constant, repetitive motion with her right wrist and elbow and (2) constant repetitive gripping with her right (dominant) hand.

The ALJ called on vocational expert ("VE") Joni Crayton to give her professional opinion. The VE testified that Plaintiff's RFC would not allow her to return to her past work (step four) because it involved frequent reaching and other activities with both arms. The ALJ then turned to step five, which asks whether Plaintiff is capable of performing the demands of other jobs that exist in significant numbers. The VE identified furniture rental clerk, counter clerk and boat rental clerk as jobs that Plaintiff could perform. The ALJ also looked to Medical-Vocational Rule 202.21 (that would apply absent the non-exertional impairments), and it indicated a finding of not disabled. That guideline (used as a framework) and the VE's testimony were found to support a conclusion that Plaintiff was not disabled.

**Issues on Appeal**

Plaintiff asserts two errors on appeal. She first challenges the sufficiency of the evidence to support the ALJ's conclusion that she can perform light work, which requires lifting of up to 20 pounds. Plaintiff's second issue argues that the ALJ did not follow the agency's requirements that he give specific reasons for not finding Plaintiff fully credible. Given the resolution of the first issue, the court need not address the second issue.

**Standard of Review; Substantial Evidence**

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards. Villa v. Sullivan, 895 F.2d 1019, 1021 (5th Cir. 1990). "Substantial evidence is more than a scintilla and less than a preponderance. It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Muse v. Sullivan, 925 F.2d 785, 789 (5th Cir. 1991). A finding of no substantial evidence is justified only if there are no credible evidentiary choices or medical findings which support the ALJ's determination. Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988).

**Issue 1: Lifting Ability**

    **A. Medical Records**

Plaintiff began complaining in 1998 about pain and swelling in her right arm. Dr. A. Edward Dean, an orthopedic surgeon, examined Plaintiff in September 1998 and found tenderness over the lateral epicondyl and tenderness and pain with extension of the wrist

against any resistance. Dr. Dean opined that Plaintiff "cannot do repetitive motion and lifting with this right arm" but "[o]therwise, she could be at work." Tr. 101. Plaintiff returned six months later, in March 1999, and reported that her employer had been unable to find her any work that she could perform, given her right arm limitations. Dr. Dean wrote, apparently based on Plaintiff's report: "If they could find some work where she didn't have to do repetitive motion, she could work." Plaintiff reported that she would like to visit a neurologist. Tr. 100.

Plaintiff returned in November 1999 after seeing a neurologist, Dr. Schwendimann, who reported that Plaintiff's EMG was within normal limits and he saw no sign of nerve abnormalities. Dr. Schwendimann agreed with Dr. Dean's diagnosis. Plaintiff's right arm was still tender. Dr. Dean told Plaintiff that he had nothing further to offer, other than surgery to the elbow, which she should consider. Tr. 99. Plaintiff did not appear for a rehabilitation conference, but Dr. Dean and the counselor discussed the case. Dr. Dean wrote: "I feel that the patient could do some type of work as long as she is not doing repetitive use of her right arm and/or elbow." Tr. 98.

Dr. James Lu, an internal medicine physician, performed a consultative examination in June 2000. He reported how Plaintiff's problems began with a cut right thumb in 1994 that became infected and eventually required surgery to reattach a tendon. After the surgery, Plaintiff returned to work on "light duty" but then developed intermittent numbness and pain in the right forearm that seemed to occur primarily after extended periods of repetitive

motion. Plaintiff was eventually released from work due to lack of jobs that she could perform at the plant where she worked. Tr. 102.

Dr. Lu's physical examination found that Plaintiff had no significant problems other than her right extremity. A detailed examination of both extremities revealed the expected problems with the right arm, but no concerns about the left arm were observed. Motor strength was normal with the exception of right grip strength. Dr. Lu concluded, "Although the patient does have intermittent pain involving the right wrist/forearm, it generally does not occur, except with repetitive motion and exertion of strength with that hand. She should avoid this type of activity." Tr. 103-05.

**B. Testimony**

Plaintiff testified at the hearing about her work history, which included 20 years at Libbey Glass that ended when she was released in 1999 due to inability to do the work. She received workman's compensation benefits for about two years and eventually settled for $25,000. Tr. 122-28. The ALJ asked if Plaintiff had "any other problems besides the thumb and the tendon in your right arm," and Plaintiff said "no." Tr. 128. Plaintiff said she does some housework, cooks and drives "every now and then." Tr. 128-29. She denied any difficulty sitting, standing, walking or the like. When asked how much weight she could lift, she said: "My limitation was I think, five to ten." She clarified that that was with her right arm, and she responded affirmatively when asked if she was "okay on the left arm." Tr. 130. Plaintiff wrote on one of the forms required by the agency that she could not use her hands

due to lack of grip or strength and that her lifting ability was limited to 10 pounds or less. Tr. 79. Luther Jeter, Plaintiff's uncle, testified that Plaintiff tells him that she can't lift anything. Tr. 133.

### C. Analysis

The ALJ's question to the VE and the Guideline used as a framework assumed an RFC to perform light work, subject to some limitations on gripping with the right hand, repetitive motion with the right wrist and elbow, and the like. Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. 20 C.F.R. §§ 404.1567(b) and 416.967(b). Plaintiff faults the ALJ for concluding that she has those capabilities when there is no affirmative evidence in the record in that regard. The record does not contain an RFC assessment form or other evidence by which a physician specifically determined Plaintiff's lifting ability. A disability examiner did examine the medical records and conclude that they supported a finding that Plaintiff could perform those lifting requirements, but the examiner was not a physician or medical professional. Tr. 32-38.

The medical reports reviewed during an administrative hearing "should include . . . [a] statement about what you can still do despite your impairment(s) based on the acceptable medical source's findings . . . ." 20 C.F.R. §404.1513(b)(6). The regulation continues that the agency will request a medical source statement about what the claimant can still do, but the lack of such a statement will not automatically make the record incomplete. Id. When

the ALJ does not request such a medical statement, the court's inquiry is whether the ALJ's decision is supported by substantial evidence in the record. Ripley v. Chater, 67 F.3d 552, 557-58 (5th Cir. 1995).

No medical source stated that Plaintiff could, despite the significant limitations to her right arm and hand, lift 10 pounds frequently and 20 pounds occasionally during the course of a work day. The medical records do not indicate any problems with Plaintiff's left arm, but the court would be guilty of speculation beyond its area of knowledge if it concluded that all 50-year old women with one good arm can perform the lifting demands of light work, and that assumption is necessary to support the ALJ's decision, given the lack of affirmative medical source evidence on this point. The only specific evidence with regard to lifting comes from Plaintiff's testimony, and it indicates that Plaintiff is not able to perform those demands. The ALJ found Plaintiff's testimony not entirely credible in light of the medical records, but those medical records do not specifically address the lifting capacity. And Dr. Dean's final report that he believed Plaintiff could so "some type of work" that did not involve repetitive use of the right hand is not sufficiently specific to support a finding that Plaintiff can perform the lifting requirements of light work.

**D. Conclusion**

Under these circumstances, the ALJ's decision is not supported by substantial record evidence. A similar result was reached in Ripley, where the medical evidence established that the claimant had a problem with his back but did not clearly establish the effect the condition had on his ability to work. The only evidence on his ability came from his own

testimony, so the Fifth Circuit ordered the case remanded with instructions to obtain a report from a treating physician regarding the effects of the claimant's back condition on his ability to work.

A remand is appropriate in this case, but it should be left to the ALJ whether to request such an opinion from a treating physician, a consultative physician or both. On remand, Plaintiff and the agency may further explore this and any other relevant matters. See 20 C.F.R. § 404.983 (following a federal court remand, "[a]ny issues relating to your claim may be considered by the administrative law judge whether or not they were raised in the administrative proceedings leading to the final decision in your case."). See also Social Security Law and Practice, § 55:74 (there is ordinarily "no limit on a claimant's supplementing the record on remand" after a sentence four or sentence six remand).

Accordingly;

**IT IS RECOMMENDED** that the Commissioner's decision to deny benefits be **REVERSED** and this case be **REMANDED** to the agency pursuant to the fourth sentence of 42 U.S.C. §405(g) for further proceedings in accordance with this report and recommendation.

### Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another

party's objections within ten (10) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 10 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See <u>Douglass v. U.S.A.A.</u>, 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED at Shreveport, Louisiana, this 5th day of December, 2005.

_____
MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE